**Affirm and Opinion Filed December 28, 2022**



**In The**
**Court of Appeals**
**Fifth District of Texas at Dallas**

### No. 05-22-00056-CV

**LISA M. RODRIGUEZ, Appellant**
**V.**
**ESEQUIEL RODRIGUEZ, JR., Appellee**

**On Appeal from the 301st Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DF-16-18425**

## MEMORANDUM OPINION

Before Justices Partida-Kipness, Nowell, and Rosenberg[1]
Opinion by Justice Nowell

Appellant Lisa M. Rodriguez (Wife) appeals from the final divorce decree entered on December 10, 2021. In four issues, she challenges whether a valid Rule 11 agreement was formed between her and appellee Esequiel Rodriguez, Jr. (Husband) regarding the division of two pension plans and whether the trial court abused its discretion by setting aside the stipulation without good cause. In a separate issue, she contends the trial court abused its discretion by denying her name change request. We affirm the trial court's judgment.

---

[1] The Hon. Barbara Rosenberg, Justice, Assigned

## Background

Husband and Wife married on September 27, 1986. On August 23, 2016, Husband filed an original petition for divorce based on insupportability. Wife filed a general denial.

For two years, the parties engaged in discovery and mediation. On May 8, 2019, they participated in a bench trial.

At the beginning of the proceeding, the court asked if Husband and Wife had reached any agreements. Wife stated the parties agreed "the pensions, both of them respectively, will be divided with a 50 percent shared interest of the benefit as of the date of divorce, and that is a 50 percent shared interest per each party as of the date of divorce." The court asked Husband if that was "your agreement," and Husband's counsel responded, "Yes, that's my understanding." During the bench trial, Wife again stated the parties made an agreement regarding the Bank of America and Time Warner pensions; therefore, "We don't need to go into those." Instead, the parties presented evidence regarding other assets, including other pension plans.

The trial court issued a memorandum ruling on May 21, 2019. It granted, among other things, the divorce based on insupportability and "accepted the agreement of the parties to divide the Bank of America pension and the Time Warner Cable pension fifty-fifty and renders judgment thereon."

On June 19, 2019, prior to entry of a final decree, Husband filed a "motion for clarification of judge's memorandum ruling dated May 21, 2019." He argued, in

relevant part, that he agreed to the division of the Bank of America and Time Warner pension funds based on his belief he was getting a straight 50/50 split. He did not realize Wife's counsel "was using the term 'shared interest of the benefit' as words of art contained within a QDRO." He asked the court to clarify the agreement because it put him at a disadvantage in receiving funds from the accounts. He also asserted he "[did] not believe that was the court's position to convey those funds on less than an even 50/50 basis."

Wife filed a response and argued "the parties announced their agreement on the record and the record is clear." She asserted Husband's attorney's failure to understand the consequences of the agreement was not a valid reason to change the property division and was not subject to a clarification order because Husband was seeking a correction, not a clarification. She emphasized Husband failed to object to the agreement on May 8, 2019, and instead indicated his understanding of it in open court.

The trial court held a hearing on Husband's motion to clarify on July 1, 2019. Husband's counsel again stated, "We didn't think that when we agreed to a shared account that it meant that we didn't get our 50/50, but that is exactly what it means." The court acknowledged it could not necessarily correct the agreement but understood the parties' positions and wanted to see "the provision that would allow the Court to change the parties' agreement or to get into parol evidence of why you made this agreement."

Before the trial court ruled, Husband filed a "motion to modify, correct, or reform judgment to comply with statutory and case law requirements for oral agreements." He urged there was no meeting of the minds on the issue of a shared interest regarding the 50/50 division of the two pension plans; therefore, he requested the court render judgment dividing the two pension plans 50/50 between the parties. After a hearing, the trial court issued a memorandum on Husband's motion to modify, correct, or reform in which it "set[] aside the agreement of the parties regarding the two retirement accounts in question."

Wife filed a motion for reconsideration. After a hearing on November 15, 2019, the trial court denied the motion for reconsideration from the bench. The trial judge indicated she did not believe the parties had a "meeting of the minds on this situation at all, and so it messes up the whole deal." The trial court ordered a new trial.

A second trial commenced on September 22, 2021. The trial court granted the divorce based on insupportability and rendered judgment on October 26, 2021. It further granted, among other things, Husband and Wife each a 50 percent separate interest in the Bank of America and Time Warner pensions. The final decree of divorce was entered on December 10, 2021. This appeal followed.

**Agreement Regarding Pension Plans**

Wife raises the following issues regarding her Bank of America and Time Warner pension plans: (1) Was a Rule 11 agreement formed? (2) Was mutual assent

–4–

present between the parties? (3) Is Husband's acontextual interpretation of "shared interest" correct? and (4) Did the trial court abuse its discretion by setting aside the parties' agreement and not identifying the appropriate standard or requiring Husband to demonstrate good cause? Husband responds whether an agreement existed and the terms of any alleged agreement are immaterial to this Court's review because of the procedural posture of the case and subsequent rulings by the trial court. We agree with Husband.

Our discussion here is controlled by one fact: the trial court granted a new trial. Granting a new trial has the legal effect of vacating the original judgment and returning the case to the trial docket as though there had been no previous trial or hearing. *Markowitz v. Markowitz*, 118 S.W.3d 82, 88 (Tex. App.—Houston [14th Dist.] 2003, pet. denied). "Thus, when the trial court grants a motion for new trial, the court essentially wipes the slate clean and starts over." *Wilkins v. Methodist Health Care Sys.*, 160 S.W.3d 559, 563 (Tex. 2005). Once a new trial is granted, the prior findings or rulings of the trial court are set aside and have no preclusive effect. *Estate of Wright*, No. 09-18-00227-CV, 2020 WL 1173701, at *3 (Tex. App.—Beaumont March 12, 2020, no pet.) (mem. op.).

After the trial court granted a new trial and denied Wife's motion for reconsideration, Wife did nothing further to challenge the trial court's ruling. Although Wife could not appeal the grant of a new trial, she was not left without a potential remedy. *See, e.g., Watson v. Moray*, 133 S.W.3d 877, 878 (Tex. App.—

–5–

Dallas 2004, no pet.) ("An order granting a motion for new trial is not an appealable order.").

Her lawyers discussed extensively on the record whether to file a writ of mandamus. Wife's counsel acknowledged the "fastest and quickest and most efficient way" to resolve the issue was to file a mandamus. Wife asked the court if it would consider continuing the trial so "it will give me a sufficient time to file a petition for writ of mandamus on the second floor so we can have this issue tested." The court answered, "Sure." However, later in the hearing, Wife's counsel indicated they needed a new trial because "I don't want to incur the extra expense of a mandamus." Wife's attorney clarified the procedural posture of the case if she chose not to file a mandamus. "I just want to make clear that if you have to do a new trial, will the new trial be a complete new trial on everything?" and the court answered, "Yes."

During the second trial, the previous alleged agreement between the parties was never mentioned during the testimony regarding division of the pension funds.[2] Wife never tried to admit it into evidence or object to the trial court's failure to consider it. To the extent Wife argues the trial court made it clear by its previous rulings that it would not revisit the alleged agreement in the second trial, this did not absolve Wife of her obligation to take some action to preserve the issue for appeal.

---

[2] The prior agreement was mentioned during testimony regarding attorney's fees, but such testimony is immaterial for purposes of this appeal.

We reject Wife's invitation to address an issue she could have challenged through a petition for writ of mandamus, but chose not to, and should have raised again during the second trial after the trial court "essentially wipe[d] the slate clean and started] over." *Wilkins*, 160 S.W.3d at 563. We overrule issues one, two, three, and four.

**Restoration of Maiden Name**

Wife argues the trial court abused its discretion by denying her requested name change and by failing to explain in the decree why it denied the request. Husband responds the trial court did not abuse its discretion because Wife failed to timely plead for the name change and provided no evidence of her former name.

A trial court's ruling on a name change is reviewed under an abuse of discretion standard. *In re Mayol*, 137 S.W.3d 103, 105 (Tex. App.—Houston [1st Dist.] 2004, no pet.). The test for an abuse of discretion is whether the trial court acted without reference to any guiding rules and principles or whether it acted arbitrarily or unreasonably. *Id.*; *see also Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985).

Wife relies on family code section 6.706(a), which provides that "[i]n a decree of divorce or annulment, the court shall change the name of a party specifically requesting the change to a name previously used by the party unless the court states in the decree a reason for denying the name change." TEX. FAM. CODE ANN. § 6.706(a). Because the statute mandates that the court "shall" change the name of

the party unless the court states a reason for denying it in the decree, Wife argues the trial court erred. We reject Wife's argument.

A judgment, absent issues tried by consent, must conform to the pleadings. TEX. R. CIV. P. 301 (the judgment of the court "shall conform to the pleadings"); *In re P.M.G.*, 405 S.W.3d 406, 417 (Tex. App.—Texarkana 2013, no pet.). Relief, therefore, may not be granted in the absence of pleadings to support that relief. *Id.* (citing *Cunningham v. Parkdale Bank*, 660 S.W.2d 810, 813 (Tex. 1983)).

Wife never filed a pleading requesting a name change. Rather, she first requested a name change at the entry hearing of the final divorce decree, which occurred almost three months after the second trial concluded and two months after the trial court rendered judgment granting the divorce in its memorandum ruling. Without a pleading requesting a name change, the trial court could not include such unrequested relief in the judgment. *See* TEX. R. CIV. P. 301.

In an attempt to circumvent her pleading deficiency, Wife argues section 6.706(a) does not require a pleading to obtain relief because it refers to a party "requesting" a name change as opposed to family code section 45.105(a) which states the court shall enter a decree changing the name of a party "specifically *praying* for the change." *Compare* TEX. FAM. CODE ANN. § 6.706(a) *with* TEX. FAM. CODE ANN. § 45.105(a). Because she "requested" a name change, Wife contends the trial court had a duty to comply with section 6.706(a) by including the reason for denying her name change.

We disagree and need not decide the significance, if any, of the difference in the statutory language of these two sections. By waiting until months after the close of evidence at trial and outside the deadline to file a trial amendment, Wife did not invoke the trial court's duties under section 6.706(a). Moreover, Wife did not present any evidence of her former name. She merely stated she wanted her name changed to Lisa Elayna Mendiola. Under these facts, we cannot conclude the trial court acted outside its broad discretion.[3] *See Mayol*, 137 S.W.3d at 105; *see also Downer*, 701 S.W.2d at 241–42.

In reaching this conclusion, we reject Wife's argument she has suffered harm. Wife may still file a petition with the court requesting a name change. *See* TEX. FAM. CODE ANN. § 45.101 ("An adult may file a petition requesting a change of name in the county of the adult's place of residence."). We overrule appellant's fifth issue.

## Conclusion

We affirm the trial court's judgment.

220056f.p05

/Erin A. Nowell//
_____
ERIN A. NOWELL
JUSTICE

---

[3] Other than Wife stating at the entry hearing that "she's requesting that her name change to Lisa Elayna Mendiola," there is no indication of whether she was seeking relief under section 6.706(a) or section 45.105(a). When Husband objected that "they've never pled for it," Wife made no argument as to whether a pleading was necessary.



## Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

LISA M. RODRIGUEZ, Appellant

No. 05-22-00056-CV      V.

ESEQUIEL RODRIGUEZ, JR.,
Appellee

On Appeal from the 301st Judicial
District Court, Dallas County, Texas
Trial Court Cause No. DF-16-18425.
Opinion delivered by Justice Nowell.
Justices Partida-Kipness and
Rosenberg participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

It is **ORDERED** that appellee ESEQUIEL RODRIGUEZ, JR. recover his costs of this appeal from appellant LISA M. RODRIGUEZ.

Judgment entered this 28th day of December 2022.